**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, PLAINTIFF, | ) | CASE NO. 1:20-cr-714 |
| vs. | ) | CHIEF JUDGE SARA LIOI |
| KENNETH COLLINS, DEFENDANT. | ) | MEMORANDUM OPINION AND ORDER |

Before the Court is the motion of defendant Kenneth Collins ("Collins") for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 65 (Motion).) This is Collins' third request for early release. Appointed counsel filed a supplement (Doc. No. 69 (Supplement)), and plaintiff United States of America (the "government") filed an opposition to the motion. (Doc. No. 71 (Response).) For the reasons set forth herein, the motion is DENIED.

## I. BACKGROUND

On July 9, 2020, while officers were attempting to execute an arrest warrant on Collins for a state felonious assault charge, Collins fled. Collins led officers on a chase through the backyard of a residence to a fence where he discarded a firearm in the bushes. Collins attempted, but failed, to get over the fence, at which point officers apprehended him and then also secured the discarded firearm. Collins was arrested and then released on bond by the state court. At the time of his arrest, Collins was on federal supervised release for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). (*See* N.D. Ohio Case No. 1:12-cr-519.)

On November 4, 2020, an indictment issued charging Collins with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 1.) After a detention hearing, the magistrate judge denied Collins pretrial bond because of his attempt to evade police at time of his arrest, his extensive criminal history, his history of evading police (including his use of aliases), and his repeated supervision violations and failures to appear in court. (Doc. No. 14 (Detention Order), at 2.) In denying Collins' motion to revoke the detention order, this Court emphasized:

> Collins has repeatedly demonstrated that he is both dangerous and unable or unwilling to submit to authorities and, therefore, a flight risk. Ultimately, the Court finds that Collins' proclivity for drug trafficking and illegal weapons ownership, coupled with his inability to comply with release conditions and ability to evade authorities, render him an especially poor candidate for release on bond pending trial.

(Doc. No. 28 (Memorandum Opinion and Order), at 7.)

On October 22, 2021, Collins was sentenced to a custody term of 96 months to run concurrent with a sentence imposed in N.D. Ohio Case No. 1:12-cr-519, following his guilty plea to being a felon in possession. (Doc. No. 43 (Judgment); *see* Minutes of Proceedings [non-document], 10/22/2021.) He is serving his sentence at Hazelton USP and has an anticipated release date of August 18, 2027. (*See* https://www.bop.gov/inmateloc/, last visited 11/12/2025.)

Beginning in August 2022, Collins sought compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 45 (First Motion for Compassionate Release); Doc. No. 47 (Supplement).) In his first motion, Collins requested early release due to the conditions surrounding the COVID-19 pandemic; his multiple medical conditions, including osteoarthritis, hypertension, diabetes, and limited mobility associated with hip and knee deterioration; and concern for the custodial situation involving his minor son, given that the child's mother and

primary caregiver had suffered several strokes. (*See generally id*.) The Court denied the motion finding that Collins had failed to demonstrate the existence of extraordinary and compelling reasons to support early release. (Order [non-document], 1/27/2023.) Further, the Court went on to hold that, even if Collins had established the requisite extraordinary and compelling reasons, a reduction of the prison term would not be appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a). (*Id*.)

In his second request for compassionate release, Collins relied on post-pandemic conditions at his facility, as well as his previously asserted medical conditions, including osteoarthritis, hypertension, diabetes, asthma, and knee and hip conditions. He also reasserted his concerns for his minor son relying (once again) on the fact that the child's mother had previously suffered two strokes. (*See* Doc. No. 56 (Second Motion for Compassionate Release); Doc. No. 58 (Supplement).)

On April 9, 2024, the Court issued a decision denying Collins' second request for compassionate release. As the initial matter, the Court found that Collins had failed to demonstrate the existence of an extraordinary and compelling reason. The Court found that Collins could not rely on his concern over contracting COVID-19, where he had been offered but refused the COVID-19 vaccine. (Doc. No. 62 (Memorandum Opinion and Order), at 8.) With respect to his medical conditions, the Court found:

> Here, Collins does not suffer from a terminal illness or a serious medical condition that substantially diminishes his ability to provide self-care, nor does he point to any evidence that he is being denied necessary long-term or specialized care. Rather, the supplied medical records demonstrate that his knee, back, and hip pain has been assessed with MRIs and X-rays and treated with braces and medicated patches. It also appears that surgery has been explored, as recently as November 2023, and all of Collins' medical conditions continue to be monitored. He has also been provided with medication for his asthma and hypertension, and he has been

> assigned a bottom bunk. (*See* Doc. No. 56-3 (Medical Records); Doc. No. 61-2 (Medical Records).) In short—and consistent with the Court's findings a little more than a year ago—the BOP is properly treating and controlling Collins' non-terminal medical conditions. His combined medical conditions, therefore, do not rise to the level of extraordinary and compelling reasons justifying early release.

(*Id*. at 7.) As for the second identified reason for release—concern for his minor son—the Court found that it "likewise fail[ed] to overcome the first obstacle to compassionate release." (*Id*.) Specifically, the Court held:

> Under § 1B1.13(b)(3) and relevant to the present motion, a defendant may establish an extraordinary and compelling reason upon the death or incapacitation of the caregiver for a defendant's minor child. § 1B1.13(b)(3)(A). While Collins once again points to the fact that his son's mother has suffered strokes in the past, he has failed to show that these strokes have rendered her incapacitated. Rather, the letter of support supplied by his son's mother merely indicates that she would be "extremely grateful to be able to have the *assistance and support*" from defendant during their son's "vital adolescent years." (Doc. No. 56-5, at 2 (emphasis added).)

(*Id*. at 7–8.)

The Court also went on to find that, even if Collins had cleared the initial hurdle of demonstrating an extraordinary and compelling reason, "the Court would have still denied his motion because the sentencing factors in § 3553(a) do not favor release." (*Id*. at 8 ("As the Court has recognized on numerous occasions most recently in January 2023—defendant's dangerous behavior immediately prior to his arrest, his criminal history with drugs and weapons, and his past failures to abide by conditions while on supervision all counsel against early release.").)

In his third motion for compassionate release, Collins seeks a sentence reduction for essentially the same reasons—minus the COVID-19 concerns—he raised in his first two motions. First, Collins again cites his myriad of medical conditions. Without support, he claims that he needs knee and hip surgeries, which he speculates he is "unlikely to receive while in Bureau of Prisons ['BOP'] custody." (Doc. No. 69, at 2.) He insists that the medical problems associated

with his knees and hips "cannot be expect to heal without surgical intervention." (*Id*.) "Because he needs surgery," he continues, "his ability to care for himself is limited because his mobility is limited." (*Id*.)

Collins also repeats his concern for his minor son, citing the mother's strokes but also maintaining, without support, that his son has been diagnosed with autism and the mother has now also been diagnosed with cancer, the latter he claims is impacting her ability to care for herself and Collins' son. (*Id*. at 2–3.) Through counsel, he suggests that, if he is released, "he would be able to take an active role in caring for his son" and his son's mother, and that he can live with them, which would "facilitate care for both of them." (*Id*. at 3.)

## II. LAW AND DISCUSSION

The Court set forth in prior decisions the standard used to evaluate motions for compassionate release under 18 U.S.C. § 3582 and the amended policy statement found at U.S.S.G. § 1B1.13. (*See, e.g.*, Doc. No. 62, at 5–6.) For purposes of setting the stage for the present motion, it is sufficient to note that, under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

As the government correctly observes, Collins has not demonstrated that he has exhausted his administrative remedies before filing this most recent compassionate release motion. (Doc. No. 71, at 5–6.) While Collins claims that he made a request to the warden of his facility on November 5, 2024, and has not received an answer, he offers no documentation to substantiate this representation. (Doc. No. 65, at 1.) As noted, exhaustion of administrative remedies is a claims-processing rule that is mandatory if the government invokes it, which it has here. *Alam*, 960 F.3d at 833–34 (citations omitted); *see, e.g., United States v. Michl*, 1:21-cr-21-2, 2024 WL 3675819, at *3 (N.D. Ohio Aug. 6, 2024) ("As the party seeking a compassionate release, it is [defendant's] burden to show that he is entitled to relief, including that he has properly exhausted his administrative remedies." (citation omitted)). Accordingly, on this basis alone, Collins' latest request for a compassionate release is properly denied.

And even if the Court could excuse Collins' failure to exhaust, it would find that Collins has not demonstrated the existence of extraordinary and compelling reasons that would warrant early release. Collins has failed to show that there has been any change in his medical conditions, since the Court last considered the issue 18 months ago that qualifies him for consideration under the first category of extraordinary and compelling reasons under § 1B1.13(b)(1) (Medical Circumstances of the Defendant).) Neither his belief that he requires surgery—unsupported by any medical documentation—nor his unsubstantiated speculation that he is unlikely to receive surgery while in BOP custody, is sufficient to meet the threshold. Indeed, Collins has come forward with no evidence that would cause this Court to reconsider its prior determination that it appears that the BOP is properly treating and controlling Collins' non-terminal medical conditions. (*See* Doc. No. 62, at 7.)

Collins' equally unsupported claims relating to his minor son fail to establish extraordinary and compelling reasons under the third enumerated category under § 1B1.13(b)(3) (Family Circumstances of the Defendant). Collins again relies on his son's mother's strokes, and now also makes reference to her cancer diagnosis. (Doc. No. 71, at 8.) Yet, Collins still has failed to demonstrate that his son's mother's medical conditions have rendered her incapacitated. (*See* U.S.S.G. § 1B1.13(b)(3) (Under § 1B1.13(b)(3), a defendant may establish an extraordinary and compelling reason upon the "*death* or *incapacitation* of the caregiver" for a defendant's minor child. (emphasis added)).) He points to what appears to be an email from the child's mother, wherein she makes reference to her prior strokes. (Doc. No. 65-2 (Email).) But neither her representation that Collins "is needed at home to *assist* with his child physically, mentally and emotionally[,]" nor her belief that Collins is not "a threat and [she] would really rather [he] be released than incarcerated[,]" establishes that she is incapacitated or otherwise unable to provide care for Collins' son. (*Id*. (emphasis added).)

But even if Collins had exhausted his administrative remedies and demonstrated the existence of an extraordinary and compelling reason, the § 3553(a) factors continue to weigh against early release. The Court first considered these factors in January 2023, and its reasoning then still applies. There, the Court held:

> Defendant, who is 48 years old, has served approximately 25% of a sentence for being a felon in possession of a firearm. Prior to his arrest, defendant led police on a footrace through a neighborhood wherein he attempted to discard his weapon. His weapon offense was serious, and he was serving a period of supervised release for being a felon in possession of ammunition at the time of his arrest. Defendant also has an extensive criminal history that began when he was 17 years old and spans 30 years; his criminal history includes multiple weapons and drug trafficking convictions. The nature and extent of defendant's criminal history counsels strongly against granting the requested relief, and his willingness to possess a firearm even while on supervised release—suggests that he is unwilling to refrain from

> possessing weapons and thus presents a serious danger to the community. The Court has also considered defendant's undocumented programming, his family support, and his concern for his minor son. But after considering all of the factors, the Court finds that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offense, protect the public, promote respect for the law, afford adequate deterrence, and ensure just punishment. Based upon these same facts, and as indicated previously, the Court also finds that defendant poses a serious danger to the community. Further, to the extent that defendant requests to be released and to serve a period of supervised release on home confinement, for the reasons already stated, defendant is not an appropriate candidate for release under § 3582, even with conditions.

(Order [non-document], 1/27/2023; *see* Doc. No. 62, at 8–9.) Beyond the passage of time, little has changed. While Collins has now documented his prison programming (*see* Doc. No. 65-4 (Programming Certificates)) and the Court has considered it, there is nothing about the present motion that alters the Court’s two prior post-sentencing evaluations of the § 3553(a) factors.

The Court is sympathetic to Collins’ concern for his son. “The care of minor children while a parent is incarcerated is a problem faced by many convicted defendants.” *See United States v. Kibby*, No. 2:19-cr-179, 2021 WL 2009568, at *3 (S.D. Ohio May 20, 2021). Unfortunately, Collins’ present family circumstances are largely the result of his own dangerous and illegal behavior, and, as the Court has now determined on multiple occasions, these circumstances do not warrant early release. *See United States v. Lawrence*, 609 F. Supp. 3d 544, 550 (E.D. Mich. 2022) (noting that defendant’s violation of the terms of his supervision is the reason his children are growing up without a father).

After considered all of the § 3553(a) factors, the Court again finds that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on the same facts,

the Court also finds (once again) that defendant poses a danger to the community.

## III. CONCLUSION

For the foregoing reasons, the Court denies Collins' motion (Doc. No. 65) for a compassionate release. Collins is cautioned that any further compassionate release motions that do not demonstrate a significant change in circumstances will be summarily denied.

**IT IS SO ORDERED**.

Dated: November 12, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**